**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| CRUM AND FORSTER SPECIALTY INSURANCE COMPANY., | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 1:24-cv-11438 |
| v. | ) ) | Honorable |
| RESTORE CONSTRUCTION INC., MICHAEL T. GOSS and ZOE L. GOSS, | ) ) ) | |
| Defendants. | ) ) ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Crum and Forster Specialty Insurance Company ("CFSIC"), by and through its undersigned counsel, as and for its Complaint for Declaratory Judgment against Defendants Restore Construction Inc. ("Restore"), Michael T. Goss and Zoe L. Goss (the "Claimants"), states as follows:

**NATURE OF THE ACTION**

1.      In this action, CFSIC seeks a determination of its rights and obligations under insurance policies issued to Defendant Restore in connection with an Underlying Action (as defined herein) filed by the Claimants, which asserts certain claims against Restore.

2.      The Underlying Action (defined herein) is pending in the Circuit Court of Will County, Illinois.

3.      CFSIC issued two Service Providers Environmental Coverage Policies (the "Policies" as defined herein) to Restore, as described more fully below.

4.      The scope of coverage available to Restore in connection with the claims asserted against them in the Underlying Action is governed by the terms, conditions, and exclusions of the Policies.

## JURISDICTION AND VENUE

5.      Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).

6.      Plaintiff CFSIC is a Delaware corporation with a statutory home office in Delaware and a main administrative office in Morristown, New Jersey. At all relevant times, CFSIC conducted business in the State of Illinois.

7.      Defendant Restore is a corporation organized under the laws of Illinois with its principal place of business in Melrose Park, Illinois.

8.      Defendants Michael T. Goss and Zoe L. Goss are residents of Bolingbrook, Illinois and citizens of the State of Illinois. Plaintiff CFSIC does not assert any claim against Defendants Michael T. Goss and Zoe L. Goss in the Complaint and they have been named as defendants in this action solely as a necessary and indispensable parties.

9.      Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiff CFSIC, on the one hand, and Defendants Restore, Michael T. Goss and Zoe L. Goss, on the other hand; and (b) the amount in controversy, including the potential costs of defending and indemnifying Restore with regard to the Underlying Action exceeds $75,000.

10.      Venue is appropriate under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the Underlying Action occurred in this District, and the Policies were issued and delivered in this District.

11.      An actual justiciable controversy exists between CFSIC, on the one hand, and Restore, Michael T. Goss and Zoe L. Goss, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liability of the parties hereto and to grant such relief as it deems necessary and proper.

**THE UNDERLYING ACTION**

12.  On March 4, 2019, Restore filed a mechanic's lien suit in the Circuit Court of Will County, Illinois captioned *Restore Construction, Inc., an Illinois Corporation v. Michael T. Goss, Zoe L. Goss, Rushmore Loan Management Services, Unknown Owners, and Non-Record Claimants*, Case No. 2019 CH 357 ("Underlying Action"). A true and correct copy of the Complaint in the Underlying Action is attached hereto as **Exhibit A**.

13.  On April 7, 2021, Michael Goss and Zoe Goss filed their First-Amended Counterclaims against Restore (collectively, the "Counterclaim"). A true and correct copy of the First Amended Counterclaims is attached hereto as **Exhibit B**.

14.  The Counterclaim alleges that the Claimants' house was damaged from a fire and the subsequent water used to extinguish the fire. Ex. B, 6.

15.  The Counterclaim further alleges that the Claimants contracted with Restore to repair and replace the damage to the residence upon approval of plans and specifications. Ex. B, 7.

16.  The Claimants allege in the Counterclaim that they executed a document with Restore entitled "Repair Specification" which they believed outlined the scope of work to be performed after agreement of the price. The Counterclaim further alleges the documents that were ultimately submitted by Restore to Rushmore Loan contained paragraphs and information which were not seen or agreed upon by Claimants. Ex. B, 7, 9.

17.  The Counterclaim further alleges Restore failed to place the property in pre-loss condition and failed to prevent damage to then existing property and installation of new materials. Ex. B, 10.

18.  The Counterclaim seeks damages for alleged breach of contract, breach of warranty of performance in a workmanlike manner, set off, fraud, and violations of the Illinois

Uniform Deceptive Trade Practices Act, Illinois Consumer Fraud and Deceptive Business Practices Act, Illinois Home Repair Act and the Home Repair and Remodeling Act.

## POLICIES

19.     CFSIC issued Service Providers Environmental Coverage policy numbers EPK-117192, effective from May 26, 2017 to May 26, 2018, and EPK-122880, effective from May 26, 2018 to May 26, 2019 (collectively, the "Policies"), to named insured Restore Construction, Inc.  Copies of the Policies are attached hereto as **Exhibit C**.

20.     The Policies contain the following relevant provisions:

**SECTION I - COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

     **a.**      We will pay on behalf of the insured, in excess of the deductible shown in the Declarations, those sums that the insured becomes legally obligated to pay as "damages" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking "damages" for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any "claim" or "suit" that may result. But:

       **(1)**      The amount we will pay for "damages" is limited as described in Section **III** – Limits Of Insurance And Deductible; and

       **(2)**      Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A**, **B, D,** or **E** or medical expenses under Coverage **C**.

* * *

**b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"

    **(2)** The "bodily injury" or "property damage" occurs during the Policies period; and

Ex. C, 15.                  * * *

**2.**   **Exclusions (Applicable to Coverage A Only)**

This insurance does not apply to any "damages", "defense expense", "bodily injury", "property damage" or any loss, cost or expense, or any "claim" or "suit":

               * * *

**b.**   **Contractual Liability**

For which the insured is obligated to pay "damages" by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for "damages":

    **(1)** That the insured would have in the absence of the contract or agreement; or

    **(2)** Assumed in a contract of agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement . . .

               * * *

**j.**   **Damage To Property**

Based upon or pertaining to:

               * * *

    **(4)** Personal property in the care, custody or control of the insured;

    **(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(**6**) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraph (**6**) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

\* \* \*

**k.**   **Damage To Your Product**

Based upon or arising out of "your product" or any part of it.

**l.**   **Damage To Your Work**

Based upon or arising out of "your work" or any part of it and included in the "products-completed operation hazard."

However, this exclusion does not apply if the damaged work or the work out of which the "damages" arise was performed on your behalf by a subcontractor.

\* \* \*

**y.**   **Punitive or Multiplied Damages**

Based upon or arising out of any punitive damages or the multiplied portion of treble or other multiplied "damages", or that arise out of that portion of any "claim" or "suit" seeking or awarding punitive "damages" or the multiplied portion of treble or other multiplied "damages".

Ex. C, 16-21.

\* \* \*

**COVERAGE B  - PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.**   **Insuring Agreement**

**a.**   We will pay on behalf of the insured, in excess of the deductible shown in the Declarations, those sums that the insured becomes legally obligated to pay as "damages" because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those "damages."  However, we will have no duty to defend the insured against any "suit" seeking "damages" for "personal and advertising injury" to which this insurance does not apply. . . .

Ex. C, 21.

\* \* \*

### COVERAGE D – CONTRACTOR'S POLLUTION LIABILITY

1. **Insuring Agreement**

   a. We will pay on behalf of the insured, in excess of the deductible shown in the Declarations, those sums that the insured becomes legally obligated to pay as "damages" because of "bodily injury", "property damage" or "clean-up costs" resulting from a "pollution condition" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages".  However, we will have no duty to defend the insured against any "suit" seeking "damages" for "bodily injury" or  "clean-up costs" arising from a "pollution condition" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any "claim" or "suit" that may result.  But:

      (1) The amount we will pay for "damages" is limited as described in Section III – Limits Of Insurance And Deductible; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A, B, D, or E or medical expenses under Coverage C.

      \* \* \*

   b. This insurance applies to "bodily injury", "property damage" and "clean-up costs" only if:

      (1) The "bodily injury", "property damage" or "clean-up costs" is caused by a "pollution condition" arising from "your work" away from premises you own, rent or occupy and that takes place in the "coverage territory";

      (2) The "pollution condition" occurs during the policy period;

Ex. C, 25.

\* \* \*

### COVERAGE E – ERRORS AND OMISSIONS LIABILITY

**This coverage part provides coverage on a claim-made and reported basis. Please read the entire form carefully.**

1. **Insuring Agreement**

**a.** We will pay on behalf of the insured, in excess of the deductible shown in the Declarations, those sums that the insured becomes legally obligated to pay as "damages" because of a "wrongful act" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages". However, we will have no duty to defend the insured against any "suit" seeking "damages" for any "wrongful act" to which this insurance does not apply. We may, at our discretion, investigate any "claim" or "suit" that may result.

\* \* \*

**b.** This insurance applies to "claims" for "damages" arising from a "wrongful act" only if the following conditions are met:

(1) The "wrongful" act is caused by "professional services" that take place in the "coverage territory";

(2) The "wrongful act" did not occur before the Retroactive Date shown in the Declarations or after the end of the Policies period;

(3) A "claim" for "damages" because of the "wrongful act" is first made against any insured, in accordance with Paragraph c. below, during the Policies period, or any Extended Reporting Period we provide under Section V – Extended Reporting Periods.

(4) No insured listed under Paragraph 1. Of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of "wrongful acts" or "claims" had any knowledge prior to the Policies period of a "wrongful act" that reasonably could give rise to a "claim" under this Policies;

(5) The "claim" or "wrongful act", nor any fact, incident, circumstance, transaction, advice or decision involved in the rendering of or failure to render "professional services" related to the "claim" or "wrongful act", was not reported in any manner to any insured or insurer under any policy in effect before the policy period.

Ex. C, 30-31.

\* \* \*

**SECTION IV – CONDITIONS**

\* \* \*

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence", "pollution condition", "wrongful act" or an offense which may result in a "claim". To the extent possible,

notice should include:

> **(1)** How, when and where the "occurrence", "pollution condition", "wrongful act" or an offense took place;
>
> **(2)** The names and addresses of any injured persons and witnesses; and
>
> **(3)** The nature and location of any injury or damage arising out of the "occurrence", "pollution condition", "wrongful act" or offense

* * *

    **c.** You and any other insured must:

> **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the 'claim' or 'suit'.

Ex. C, 39. <span style="float:right">* * *</span>

### SECTION V – EXTENDED REPORTING PERIODS

Solely with respect to any Coverage Part provided on a claims-made and reported basis:

* * *

**3.** A Basic Extended Reporting Period is automatically provided without additional charge. The period starts with the end of the policy period and last for ninety (90) days with respect to "claims" arising from any "occurrence", "pollution condition", "wrongful act" or offense not previously reported to us.

The Basic Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such "claims".

**4.** The Basic Extended Period does not reinstate or increase the Limits of Insurance.

**5.** A Supplemental Extended Reporting Period of twenty-four (24) months is available, but only be endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, set forth in Paragraph **3.** above, ends. The supplemental period ends twenty-four (24) months after the end of the Basic Extended Reporting Period.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting

Period will not go into effect unless you pay the additional premium promptly when due.

* * *

7.      Neither the Basic Extended Reporting Period nor the Supplemental Extended Reporting Period, if purchased, reinstates or increases the Limits of Insurance.

Ex. C, 43-44.

## SECTION VI – DEFINITIONS

* * *

3.      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish, emotional distress or death resulting from any of these at any time.

* * *

5.      "Clean-up costs" means reasonable and necessary expenses incurred for:

   **a.** The investigation, removal, remediation, response, associated monitoring, neutralization, detoxification, dilution, disposal of soil, surface water or groundwater impacted by a "pollutant" arising out of a covered "pollution condition":

   **(1)** To the extent required by applicable environmental laws, or specifically mandated by court order, the government or any political subdivision or agency of the United States of America or any state or municipality thereof; or

   **(2)** Which have actually been incurred by the government or any political subdivision or agency of the United States of America or any state or municipality thereof, or Canada or any province thereof or by any third party.

   **b.** The repair or replacement of real property unintentionally damaged during the performance of the clean-up activities specified in **a.** above. This does not include any expenses related to improvements or betterments constructed after the commencement of clean-up activities.

* * *

13.     "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work" or

**b.** Your fulfilling the terms of the contract or agreement.

**14.** "Insured contract" means:

**a.** A contract for lease of premises . . .;

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, . . .;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement. . ."

* * *

**23**. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. . .

**24.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violate a person's right of privacy;

      **f.**     The use of another's advertising idea in your "advertisement"; or

      **g.**     Infringing upon another's copyright, trade duress or slogan in your "advertisement"

25.    **"**Pollutants" means any solid, liquid, gaseous, thermal or biological irritant or contaminant, including, without limitation, "mold", bacteria, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste and any matter, that by its presence, corrupts, defiles, contaminates or is harmful to soil, air, water, living things or the environment. Waste includes materials to be recycled, reconditioned or reclaimed, but not material intentionally abandoned by an insured.

It is understood that any substance or material that is a "pollutant" does not lose its status as a "pollutant" because:

      **a.**  Such substance or material has, or may have, a useful function or purpose; or

      **b.**  The release, threatened release or presence of such substance or material in any locale is not regulated, prohibited, remedied by, or the subject of, one or more environmental laws.

26.    "Pollution condition" means the discharge, dispersal, seepage, migration, release, escape, presence, or movement of "pollutants" into or upon land, or any structure on land, the atmosphere, any watercourse or body of water, or groundwater, provided such "pollutants" are not naturally present in the environment in the concentrations or amounts discovered, unless such natural conditions are released or dispersed as a result of the performance of "your work", and such release or dispersal is unexpected and unintended from the standpoint of the insured.

Two or more "pollution conditions" arising out of the same, or related acts of discharge, dispersal, seepage, migration, release, escape or movement of "pollutants" shall be deemed to be a single "pollution condition".

"Pollution condition" does not mean or include "occurrence".

27.    "Products-completed operations hazard":

    **a.** Includes all "bodily injury and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

* * *

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)** When all of the work called for in the contract has been completed.

\* \* \*

    **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than the contractor or subcontractor working on the same project.

\* \* \*

28.    "Professional services" means those services performed for others by you, or others on your behalf, for a fee that are related to your practice as a consultant, engineer, architect, surveyor, technician, laboratory or construction manager.

29.    "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    **c.**    "Natural resource damages"

For the purposes of this insurance, electronic data is not tangible property.

\* \* \*

36.    "Wrongful Act" means an act, error or omission negligently made in the rendering, or failure to render, "professional services."

37.    "Your product":

    **a.**    Means:

        **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)**    You;

            **(b)**    Others trading under your name; or

            **(c)**    A person or organization whose business or assets you have acquired; and

        **(2)**      Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.**    Includes:

    **(1)**      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)**      The providing of or failure to provide warnings or instructions.

**c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.

**38.**    "Your work":

**a.**    Means:

    **(1)**      Work or operations performed by you or on your behalf; and

    **(2)**      Materials, parts or equipment furnished in connection with such work or operations.

**b.**    Includes:

    **(1)**      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    **(2)**      The providing of or failure to provide warnings or instructions.

* * *

Ex. C, 44-50.

## COUNT I
### No Duty to Defend or Indemnify Under Coverage A

21.    CFSIC incorporates by reference herein paragraphs 1 through 20, as if the same were fully set forth at length.

22.    The insuring agreement for Coverage A of the Policies provides, in pertinent part, that coverage is afforded for those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. Ex. C, 15.

23.     The Policies define "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including mental anguish, emotional distress or death resulting from any of these at any time." Ex. C, 44.

24.     The Policies define "property damage" to mean "[p]hysical injury to tangible property, including all resulting loss of use of that property." Ex. C, 49.

25.     The Policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Ex. C, 48.

26.     Certain exclusions contained in Coverage A of the Policies operate to preclude coverage for the claims asserted against Restore in the Underlying Action.

27.     Coverage A of the Policies contains exclusion **b.**, which precludes coverage for "property damage"… for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. Exclusion **b.** further provides that "[t]his exclusion does not apply to liability for "damages" . . . [t]hat the insured would have in the absence of the contract or agreement; or [a]ssumed in a contract of agreement that is an 'insured contract'", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement . . ." Ex. C, 16.

28.     The Counterclaim alleges that Restore breached its agreement with the Claimants by failing to properly perform the services it was to render under such agreement. The Counterclaim does not seek to impose liability against Restore for damages it would have in the absence of such agreement with the Claimants nor liability for damages that Restore assumed in an "insured contract" as defined in the Policies. Ex. B, 10.

29.     Accordingly, the Policies do not afford coverage to Restore for the claims asserted against it in the Underlying Action that seek to impose liability for "property damage" which is precluded from coverage by operation of Exclusion **b.** of Coverage A of the Policies.

30.     Coverage A of the Policies also contains exclusion **j.(5),** which precludes coverage for "'property damage' . . . [b]ased upon or pertaining to . . . [t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." Ex. C, 18.

31.     The Counterclaim alleges that, in performing its work, Restore failed to prevent damage to then existing property of the Claimants. The Counterclaim further alleges that Restore failed to properly install finish carpentry and drywall in the Claimants' house.  Ex. B, 12.

32.     Accordingly, the Policies do not afford coverage to Restore for the claims asserted against it in the Underlying Action that seek to impose liability for "property damage" which is precluded from coverage by operation of Exclusion **j.5** of Coverage A of the Policies.

33.     Coverage A of the Policies also contains exclusion **j.(6),** which precludes coverage for "'property damage' [b]ased upon or pertaining to . . . "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Ex. C, 18.

34.     The Policies define "your work" as "[w]ork or operations performed by you or on your behalf and [m]aterials, parts or equipment furnished in connection with such work or operations." The definition includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work.'" The Policies provide that exclusion **j.(6)** does not apply to "property damage" included in the "products completed operations hazard." The Policies define "products-completed operations hazard" as "'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work.'" Ex. C, 50.

35.     The Counterclaim alleges that Restore failed to return the property to its pre-loss condition and that parts of the Claimants' house upon which Restore performed its work needs to be restored, repaired or replaced because Restore's work was incorrectly performed on it. The Counterclaim further alleges that, as a result of Restore's failure to properly perform its work, the Claimants have suffered actual damages in an amount far exceeding any amount owed to Restore because they will need to reconstruct a substantial amount of work done by Restore in its attempts at reconstruction of the house. Ex. B, 23.

36.     Accordingly, the Policies do not afford coverage to Restore for the claims asserted against it in the Underlying Action that seek to impose liability for "property damage" which is precluded from coverage by operation of Exclusion **j.6** of Coverage A of the Policies.

37.     Coverage A of the Policies also contains exclusion **k.**, which precludes coverage for "property damage" . . . [b]ased upon or arising out of 'your product' or any part of it. Ex. C, 18.

38.     The Policies define "your product" to mean "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by . . . You . . . [o]thers trading under your name; or [a] person or organization whose business or assets you have acquired. The Policies further define "your product" to include "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product". Ex. C, 49.

39.     The Counterclaim alleges that Restore failed to provide appropriate attic insulation, failed to provide new materials as required under the contract and failed to provide materials that were at or near the quality of the original materials. The Counterclaim further alleges that Restore warranted that all work performed on the Claimants' house would be free from defects due to faulty materials or workmanship and major construction defects, and that

Restore breached its warranty that the Claimants' house would be free from defects due to faulty materials or workmanship and major construction defects. Ex. B, 11, 13.

40.     Accordingly, the Policies do not afford coverage to Restore for the claims asserted against it in the Underlying Action that seek to impose liability for "property damage" which is precluded from coverage by operation of Exclusion **k.** of Coverage A of the Policies.

41.     Coverage A of the Policies also contains exclusion **l.**, which precludes coverage for "property damage" which is "[b]ased upon or arising out of 'your work' or any part of it and included in the 'products-completed operation hazard.'" Exclusion **l.** provides that it "does not apply if the damaged work or the work out of which the 'damages' arise was performed on your behalf by a subcontractor." The Policies define "products-completed operations hazard" as "'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work.'" Ex. C, 18.

42.     The Counterclaim alleges that Restore agreed, pursuant to the contract between the parties, that the restoration of the Claimants' house would be done to place the property in a "pre-loss condition." The Counterclaim further alleges that Restore warranted that all work performed on the Claimants' house would be free from defects due to faulty materials or workmanship and major construction defects. Ex. B, 10.

43.     The Counterclaim further alleges that Restore breached its warranty that all work performed on the Claimants' house would be free from defects due to faulty materials or workmanship and major construction defects. The Counterclaim further alleges that Restore materially breached the contract by, *inter alia*, failing to place the property in a pre-loss condition, failing to properly install materials, failing to obtain proper approvals, registrations, inspections and certifications; and failing to prevent damage to then existing property. Ex. B, 13, 14.

44.     Accordingly, the Policies do not afford coverage to Restore for the claims asserted against it in the Underlying Action which seek to impose liability for "property damage" arising from its work on the Claimants' house that was not performed by subcontractors which is precluded from coverage by operation of Exclusion **l.** of Coverage A of the Policies.

45.      Coverage A of the Policies also contains exclusion **y.**, which precludes coverage for "damages" that are "[b]ased upon or arising out of any punitive "damages" or the multiplied portion of treble or other multiplied 'damages' or that arise out of that portion of any 'claim' or 'suit' seeking or awarding punitive 'damages' or the multiplied portion of treble or other multiplied 'damages'". Ex. C, 21.

46.     Counter-Claims VI-VII of the Counterclaim seek, *inter alia*, an award of punitive damages against Restore for its alleged egregious conduct. Ex. B, 41, 43.

47.     Accordingly, the Policies do not afford coverage to Restore for any punitive damages that may be awarded against it in the Underlying Action pursuant to the operation of exclusion **y.** of Coverage A of the Policies.

WHEREFORE, CFSIC seeks a judgment that it owes no duty under Coverage A of the Policies to defend or indemnify Restore in connection with the claims asserted against it in the Counterclaim filed in the Underlying Action.

**COUNT II**
**<u>No Duty to Defend or Indemnify Under Coverage B</u>**

48.     The insuring agreement for Coverage B – Personal and Advertising Injury Liability of the Policies provides, in pertinent part, that coverage is afforded for those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. Ex. C, 21.

49.     The Policies defines "personal and advertising injury" to mean "injury, including consequential 'bodily injury', arising out of one or more of the following offenses:

(a) [f]alse arrest, detention or imprisonment; (b.) [m]alicious prosecution; (c.) [t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; (d.) [o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's organization's goods, products or services; (e.) [o]ral or written publication, in any manner, of material that violate a person's right of privacy; (f.) [t]he use of another's advertising idea in your "advertisement"; or (g.) [i]nfringing upon another's copyright, trade duress or slogan in your "advertisement." Ex. C, 48.

50.     The Counterclaim does not include any allegations of injury, including consequential 'bodily injury", arising out of any the offenses enumerated in the Policies' definition of "personal and advertising injury".

51.     Accordingly, the allegations of the Counterclaim fail to satisfy the requirements of the Insuring Agreement of Coverage B of the Policies.

WHEREFORE, CFSIC seeks a judgment that it owes no duty under Coverage B of the Policies to defend or indemnify Restore in connection with the claims asserted against it in the Counterclaim filed in the Underlying Action.

## COUNT III
## No Duty to Defend or Indemnify Under Coverage D

52.     The insuring agreement for Coverage D – Contractor's Pollution Liability of the Policies provides, in pertinent part, that coverage is afforded for those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'clean-up costs' resulting from a 'pollution condition' to which this insurance applies.". Ex. C, 25.

53.     Paragraph (b)(2) and (3) of the insuring agreement of Coverage D further provides that coverage only applies if the "bodily injury", "property damage" or "clean-up

costs" is caused by a "pollution condition" arising from "your work" away from premises you

own, rent or occupy " and the "pollution condition" occurs during the policy period. Ex. C, 25

54.      The Policies define ""pollution condition" to mean the discharge, dispersal,

seepage, migration, release, escape, presence, or movement of 'pollutants' into or upon land,

or any structure on land, the atmosphere, any watercourse or body of water, or groundwater,

provided such 'pollutants' are not naturally present in the environment in the concentrations or

amounts discovered, unless such natural conditions are released or dispersed as a result of the

performance of 'your work', and such release or dispersal is unexpected and unintended from

the standpoint of the insured." Ex. C, 48.

55.      The Policies define "pollutants" to mean  "any solid, liquid, gaseous, thermal

or biological irritant or contaminant, including, without limitation, 'mold', bacteria, smoke,

vapor, soot, fumes, acids, alkalis, chemicals and waste and any matter, that by its presence,

corrupts, defiles, contaminates or is harmful to soil, air, water, living things or the environment.

Waste includes materials to be recycled, reconditioned or reclaimed, but not material

intentionally abandoned by an insured." Ex. C, 48.

56.      The Counterclaim does not include any allegations of "bodily injury", "property

damage" or "clean-up costs" resulting from a "pollution condition, as those terms are defined

under the Policies, that occurred during the effective periods of the Policies.

57.      The Counterclaim further does not include any allegations of "pollutants", as

that term is defined in the Policies, that were discharged, dispersed, seeped, migrated, released,

escaped, were present or moved into or upon land, or any structure on land, the atmosphere,

any watercourse or body of water, or groundwater as a result of Restore's work performed on

the Claimants' house."

58.     Accordingly, the allegations of the Counterclaim fail to satisfy the requirements of the Insuring Agreement of Coverage D of the Policies.

WHEREFORE, CFSIC seeks a judgment that it owes no duty under Coverage D of the Policies to defend or indemnify Restore in connection with the claims asserted against it in the Counterclaim filed in the Underlying Action.

**COUNT IV**
**No Duty to Defend or Indemnify Under Coverage E**

59.     The insuring agreement of Coverage E – Errors and Omissions Liability of the Policies provides, in pertinent part, that coverage is afforded "on a claims-made and reported basis" for those sums that the insured becomes legally obligated to pay as "damages" because of a "wrongful act" to which this insurance applies. Ex. C, 30.

60.     The insuring agreement of Coverage E further provides, in pertinent part, that "[w]e will have the right and duty to defend the insured against any 'suit' seeking those 'damages'. However, we will have no duty to defend the insured against any 'suit' seeking 'damages' for any 'wrongful act' to which this insurance does not apply. Ex. C, 30.

61.     Paragraph (b)(3) of the insuring agreement of Coverage E further provides that coverage only applies to a "claim" for damages because of a "wrongful act" that is first made against any insured during the policy period or any Extended Reporting Period provided under Section V – Extended Reporting Periods. Ex. C, 31.

62.     The Extended Reporting Period provided under Section V – Extended Reporting Periods of the Policies would not apply to a policy which was subject to a renewal.

63.     The coverage afforded to Restore under Policy No. EPK-117192, effective from May 26, 2017 to May 26, 2018, was renewed under Policy EPK-122880.

64.     Policy number EPK-122880 was effective from May 26, 2018 to May 26, 2019, the Basic Extending Reporting Period expired ninety days later and Restore did not pay an

additional premium necessary to purchase a Supplemental Extended Reporting Period under Policy number EPK-122880.

65.     The Counterclaim was filed against Restore on April 7, 2021 and CFSIC was not provided with its first notice of the Counterclaim until February 13, 2024.

66.     As a result, the claims asserted against Restore in the Counterclaim were not made against it or reported to CFSIC during the policy periods of the Policies.

67.     Accordingly, because the claims asserted against Restore in the Counterclaim were not made against Restore or reported to CFSIC during the effective periods of the Policies or any applicable Extended Reporting Period, such claims do not meet the requirements of the insuring agreement of Coverage E of the Policies and, therefore, no coverage is afforded to Restore for such claims under Coverage E of the Policies.

WHEREFORE, CFSIC seeks a judgment that it owes no duty under the Policies to defend or indemnify Restore in connection with the claims asserted against it in the Counterclaim filed in the Underlying Action.

## COUNT V
### No Duty to Defend or Indemnify Due To Violation of Policies' Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition

68.     The Duties In The Event Of Occurrence, Offense, Claim Or Suit condition of the Policies provides, in pertinent part, that "[y]ou must see to it that we are notified as soon as practicable of an 'occurrence', 'pollution condition', 'wrongful act' or an offense which may result in a 'claim'". Ex. C, 39.

69.     The Duties In The Event Of Occurrence, Offense, Claim Or Suit condition of the Policies further provides that "[y]ou and any other insured must immediately send us copies of any demands, notices, summonses or legal papers received in connection with the 'claim' or 'suit'." Ex. C, 39.

70. The Policies provide that "[t]hroughout this policy, the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." The Declarations identifies Restore Construction, Inc. as the Named Insured under the Policies. Ex. C, 15, 17.

71. The Counterclaim in the Underlying Action was filed against Restore on April 7, 2021.

72. Restore did not provide notice of the Counterclaim to CFSIC until February 14, 2024, nearly three years after the Counterclaim was filed.

73. The nearly three year delay by Restore in providing notice of the Counterclaim violated the Duties In The Event Of Occurrence, Offense, Claim Or Suit condition of the Policies because Restore did not provide CFSIC with notice of the Counterclaim filed against it in the Underlying Action as soon as practicable nor did it immediately send copies of the Counterclaim to CFSIC.

74. Accordingly, as a result of Restore's violation of the Duties In The Event Of Occurrence, Offense, Claim Or Suit condition of the Policies, no coverage is afforded under the Policies for the claims asserted against Restore in the Counterclaim.

WHEREFORE, CFSIC seeks a judgment that it owes no duty under the Policies to defend or indemnify Restore in connection with the claims asserted against it in the Counterclaim filed in the Underlying Action.

## **PRAYER FOR RELIEF**

Plaintiff Crum and Forster Specialty Insurance Company hereby respectfully requests the entry of an order and judgment in its favor and against Defendants Restore Construction Inc., Michael T. Goss and Zoe L. Goss declaring as follows:

a. This court has jurisdiction over the parties and the subject matter of this litigation;

    b.      The Policies do not provide coverage to Defendant Restore for the claims asserted against it in the Counterclaim filed in the Underlying Action;

    c.      Crum and Forster Specialty Insurance Company does not owe a duty under the Policies to defend or reimburse defense costs incurred by Defendant Restore in connection with the claims asserted against it in the Counterclaim filed in the Underlying Action;

    d.      Crum and Forster Specialty Insurance Company does not owe a duty under the Policies to indemnify Defendant Restore in connection with the claims asserted against it in the Counterclaim filed in the Underlying Action;

    e.      Crum and Forster Specialty Insurance Company is entitled to an award of its costs; and

    f.      Such other further relief as this Court deems just and appropriate.


Dated: November 5, 2024

                         Respectfully Submitted,

               By:    */s/ James J. Hickey*
                     James J. Hickey, Atty. No. 6198334
                     James.Hickey@kennedyslaw.com
                     Samson Polovina, Atty. No. 6342626
                     Samson.Polovina@kennedyslaw.com
                     KENNEDYS CMK
                     30 S. Wacker Drive, Suite 3650
                     Chicago, IL 60606
                     Phone: (312) 800-5029
                     Fax: (312) 207-2110
                     *Attorneys for Crum and Forster Specialty Insurance Company*